# ROSEN REICHERT BROKERAGE CO. v. UNITED STATES.

## No. M—117.

Court of Claims.

June 5, 1933.

John Enrietto, of Washington, D. C. (Chester A. Bennett, of Washington, D. C., Chase Morsey, of St. Louis, Mo., and Charles D. Hamel, of Washington, D. C., on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Kelly Kash, of Washington, D. C., on the brief), for the United States.

Before LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

The question in this case is whether plaintiff was a personal-service corporation during either or both of the years 1918 and 1919 within the meaning of section 200 of the Revenue Act of 1918 (40 Stat. 1058) and the answer to this question turns upon whether capital was a material income-producing factor. No question is made by the defendant as to the other requirements of the statute.

The question whether a corporation is entitled to personal service classification for a particular year, or years, depends very largely upon the peculiar facts in each case. During 1918 and 1919 plaintiff was engaged in selling grocery sundries, particularly canned goods and dried fruits, to wholesale grocers in St. Louis and vicinity, on a commission basis. The manner in which its business was carried on has been detailed in the findings. These findings show that during 1918 and until March, 1919, plaintiff operated under a brokerage license from the United States Food Administration and endeavored strictly to comply therewith, and, in our opinion, did so. During 1918 to some extent, but not to a very material extent, and during 1919 to a much greater extent, plaintiff sold merchandise to various jobbers and wholesalers in less than carload lots and purchased on its own account sufficient quantities of merchandise to make up carload lots in order to save freight. In some cases the cars were billed to plaintiff for distribution and it collected for the merchandise and freight before arrival and delivery, and, upon delivery, it made remittances to the shippers. This was particularly true during 1918. In other instances, where the same procedure was followed, shipment was made to plaintiff with draft on it attached to the bill of lading and it took up this draft at the bank upon arrival, paid the freight, delivered the merchandise which had theretofore been sold, and held the goods purchased on its own account until they were sold.

During 1918 and in most cases during 1919 plaintiff received only its brokerage or commission on the merchandise sold, whether such sales were made before the merchandise was ordered or afterward. Capital was not used during 1918 to a material extent and we are convinced from the facts that during that year capital was not a material income-producing factor.

In 1919, however, a different situation existed and a consideration of the record leads us to the conclusion that capital was a material income-producing factor during that year, and we have so found. Borrowed capital was used very extensively in 1919 in carrying on the regular business, and we think the income produced from the use thereof was very material.

With respect to the item of profit of $23,829.59 derived by plaintiff in November, 1919, from the sale in that year of certain of the 174,000 cases of canned tomatoes purchased by plaintiff and the firm of Ford &

Doan from the government, plaintiff contends that the profit to be derived from this source was uncertain and was not determined until 1920; that notwithstanding it kept its books upon the accrual basis, no income accrued on the sales made in 1919 until final settlement was made and it was determined whether there had been a profit or a loss. The merchandise giving rise to the item of income of $23,829.59 was purchased from the government and sold to others in 1919 and the profit, in this amount, was therefore earned and accrued to plaintiff in 1919. The government contracted to make deliveries on plaintiff's orders and the fact that plaintiff guaranteed the tomatoes sold to the public against swells and flippers, and the possibility that the government might not make deliveries in every case, did not prevent the accrual of profit on sales made in 1919, unless plaintiff was compelled to make good its guarantee. The proof does not establish that the profit determined by the Commissioner of Internal Revenue in this transaction, and included in income for 1919, was erroneous. The tomatoes purchased were delivered by the government and the sales thereof by plaintiff and Ford & Doan to dealers were fulfilled.

Plaintiff is, therefore, not entitled to recover the tax and interest assessed and collected for 1919.

Judgment will be entered in plaintiff's favor for $40,164.16, tax and interest assessed and collected for 1918, with interest thereon from May 19, 1927, in accordance with law. It is so ordered.

BOOTH, Chief Justice, did not hear this case on account of illness and took no part in its decision.